IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

MONTGOMERY BLAIR SIBLEY          :

    v.                            : Civil Action No. DKC 2006-1222

                                :

BARBARA L. HERGENROEDER,
 ET AL.                           :

### MEMORANDUM OPINION

Presently pending and ready for resolution is Defendants'
motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b) (paper 11),
and (2) Plaintiff's cross-motion for summary judgment (paper 20).[1]
The issues are briefed and the court now rules pursuant to Local
Rule 105.6, further hearing being deemed necessary.   For the
reasons that follow, the court will grant Defendants' motion to
dismiss.   Plaintiff's cross-motion for summary judgment will be
denied.

Montgomery Blair Sibley, Plaintiff, acting pro se, filed a
complaint against Defendant Barbara Hergenroeder, in her official
capacity as Director of Character and Fitness for the Maryland
State Board of Law Examiners, and against Defendant Melvin
Hirshman, in his official capacity as Bar Counsel for the Attorney

---

[1] Defendants move to dismiss "pursuant to Fed.R.Civ.P. 12(b)"
on grounds that the complaint "fail[s] to state a claim for which
relief may be granted."  (Paper 11).   Although Defendants style
their motion as one for dismissal under Rule 12(b)(6) for failure
to state a claim, the appropriate primary analysis is as a motion
for dismissal under Rule 12(b)(1) for lack of subject matter
jurisdiction.

Grievance Commission of Maryland, on May 16, 2006.  The complaint alleges that a number of Plaintiff's constitutional rights were violated by (1) Defendant Hergenroeder's delay in finalizing his application for admission to the Maryland Bar pending resolution of two grievances in Florida and (2) Defendant Hirshman's determination that he is engaged in the unauthorized practice of law because he maintains a law office in Maryland, which he uses to advise out of state clients on out of state legal issues via telephone.  (Paper 1).

The following are the facts as alleged by Plaintiff. Plaintiff has been a member in good standing of the Bars of New York, Florida, and the District of Columbia, since 1982, 1987, and 1999, respectively.  In 2002, two grievances were filed against Plaintiff with the Florida Bar for failure to pay child support and for being too litigious.  The Florida Bar has not filed any formal charges against Plaintiff.

In the summer of 2005, Plaintiff took the Maryland Bar Examination for out-of-state attorneys and was notified in October that he had passed.  On December 22, 2005, Defendant Hergenroeder wrote Plaintiff a letter stating, in pertinent part,

> The State Board of Law Examiners is requesting additional information from you at this time.  Please provide a detailed, concise affidavit . . . summarizing all the facts of the following:
> A. An explanation of the disciplinary cases pending before the Second judicial (sic)

> Circuit Grievance Committee B of the Florida Bar . . . .
>
> Please be aware that your application cannot go forward without this information and documentation.
>
> The Board of Law Examiners will not make an admissions recommendation until it is satisfied that you have met your burden under Bar Admission Rule 5 (a).  The Board will not recommend an applicant who has discipline pending in another jurisdiction.

(Paper 1, Ex. B).  On March 27, 2006, Plaintiff replied to Defendant Hergenroeder, advising her that the Florida Bar had yet to file formal disciplinary charges against him and requesting that the Board proceed with its admissions recommendation, as the Florida matter was "likely to drag on for years and [Plaintiff is] being denied the ability to practice in Maryland on allegations which have not been proved . . . ."  (Paper 1, Ex. C).

On May 1, 2006, Defendant Hirshman wrote Plaintiff concerning Plaintiff's letterhead which read "Law Office of Montgomery Blair Sibley, Chartered," listing a Rockville, Maryland address, despite the fact that Plaintiff was not a member of the Maryland Bar. (Paper 1, Ex. D).  Defendant Hirshman informed Plaintiff that it was his duty to investigate any possible unauthorized practice of law by members of the Bars of other jurisdictions and requested a response from Plaintiff explaining his activities in Maryland. (*Id.*)  Plaintiff responded on May 4, defending his actions on the grounds that: (1) his letterhead clearly indicated that he was not admitted to practice law in Maryland; (2) he was a resident of

Rockville and leased space there to avoid the commute to his other office in Washington, D.C.; (3) he had no Maryland clients; (4) he did not advertise in Maryland; and (5) his sole activity in his Rockville office was to receive mail and answer telephone calls from out-of-state clients.  (Paper 1, Ex. E).

On May 10, Defendant Hirshman wrote Plaintiff, "to the extent that you are regularly advising clients on the telephone from a Maryland office in which you are not admitted, you are engaged in the unauthorized practice of law . . . . It would appear that it may be necessary for me to seek injunctive relief."  (Paper 1, Ex. F).

Plaintiff makes the following claims: (1) denial of due process because he has been refused admission to the Maryland Bar based on unproven allegations against him, pending with the Florida Bar; (2) denial of due process, (3) violation of the Commerce Clause, and (4) violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.*, because the determination that he is engaged in the unauthorized practice of law has chilled his international and nation-wide *pro hac vice* law practice, injuring Plaintiff and his present and future clients; (5) violation of the First Amendment and (6) violation of the Privileges and Immunities Clause because the determination that he is engaged in the unauthorized practice of law has chilled his present and future clients from retaining

4

him in his international and nation-wide *pro hac vice* law practice.[2]  (Paper 1).

## II. Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond*, 945 F.2d at 768.

---

[2]     Each of the counts asks the court to declare that Defendants violated Plaintiff's rights secured by "the Common Law, the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, The Fourteenth Amendment Equal Protection Clause, The Fourteenth Amendment Due Process Clause of the Federal Constitution and the Declaration of Rights, Articles 5, 19 and 24 of the Maryland Constitution . . . ."  (Paper 1, at 4-11).  However, when enumerated, each count includes a parenthetical subheading specifying which right Plaintiff contends has been violated.  Because no counts specify violations of the Maryland Constitution, and no supporting documents reference it, this court will focus solely on the federal constitutional claims.

## III.   Analysis

### A.   Delay in Finalizing Application

In challenging Defendant Hergenroeder's delay in finalizing his application for admission, Plaintiff essentially asks the court (1) to review, in an appellate capacity, the fitness of the delay, and/or (2) to issue a writ of mandamus compelling the Board to make a determination on his application.   For the reasons that follow, this court has jurisdiction to do neither.   Defendants move to dismiss because they contend that state courts have exclusive jurisdiction over admissions to state Bars, Plaintiff has not met his burden of persuasion required for a preliminary injunction, and Defendants possess Eleventh Amendment immunity from suit.[3]

Plaintiff is challenging the Board's decision to delay finalizing his application, pending resolution of outstanding grievances.   The district court cannot review the Board's decision to delay finalizing Plaintiff's application because federal review of state court decisions in this area is under the exclusive purview of the Supreme Court:

> In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the United States Supreme Court addressed the question of the

---

[3]   Defendants improperly assert the immunity defense because Plaintiff does not seek monetary damages from the state, as required for Eleventh Amendment immunity.   *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   Because this court lacks subject matter jurisdiction to hear this case, it need not reach the issue of whether Plaintiff meets his burden of persuasion.

> jurisdiction of federal courts to consider actions challenging bar admission rules and proceedings. In *Feldman*, the Court held that district courts have no power to review state court decisions in such proceedings and that the sole method available to persons who wish to challenge those decisions is to seek review in the United States Supreme Court. *Feldman* made clear that this rule applied even to constitutional claims where such claims "are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state's bar." *Id.* at 482-83, n. 16, 103 S.Ct. at 1315-16, n. 16. Under *Feldman*, district courts have subject matter jurisdiction only over "general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. *Id.* at 486, 103 S.Ct. at 1317.

*Czura v. Supreme Court of South Carolina*, 813 F.2d 644, 646 (4th Cir. 1987).

Plaintiff challenges a decision by the Board to delay finalizing his application.  While he does not challenge a direct action by the Court of Appeals of Maryland, the Board is an extension of the state court.  *See* 2005 Md. Laws, Appendix, Rule 20; 2005 Md. Laws 16-711(a).  Federal district court review of a decision by the Board raises the same principles of equity, comity, and federalism as would federal review of an action taken by the state court directly.

The Court of Appeals of Maryland recently dealt with a similar issue when a Bar applicant secured a temporary restraining order from the Circuit Court for Anne Arundel County, ordering the Board

to provide Americans with Disability Act (ADA) accommodations for him during the summer 2005 administration of the Maryland Bar Examination. *In re Application of Kimmer*, 392 Md. 251 (2006). The applicant passed the Bar Examination, but the Board refused to recommend him for admission to the Maryland Bar, pending an adjudication on the merits of his entitlement to ADA accommodations while taking the Bar Examination. *Id*. at 261. As in the instant case, the applicant was challenging a decision by the Board not to finalize his application. In discussing whether the circuit court had jurisdiction over the case, the court stated:

> [I]t has been clear, since 1898, that the Court of Appeals has had exclusive jurisdiction over the regulation of, and admission to, the practice of law. *See Bastian v. Watkins*, 230 Md. 325, 329, 187 A.2d 304, 306 (1963) ("[I]n 1898, following a definite trend toward uniformity that apparently began as early as 1831, the Court of Appeals of Maryland was vested with exclusive power to admit applicants to practice law."); *Maryland State Bar Ass'n v. Boone*, 255 Md. 420, 430, 258 A.2d 438, 443 (1969) ("Since the passage of Ch. 139 of the Laws of 1898 . . . the Court of Appeals in the exercise of its inherent and fundamental judicial powers has supervised, regulated and controlled the admission of lawyers."); *Application of Allan S.*, 282 Md. 683, 689, 387 A.2d 271, 275 (1978) ("Upon this Court falls the primary and ultimate responsibility for regulating the practice of law and the conduct and admission of attorneys in this State."); *In the Matter of the Application of William H. Hyland*, 339 Md. 521, 534, 663 A.2d 1309, 1315 (1995). It follows that the Circuit Court for Anne Arundel County simply had no jurisdiction over any aspect of the applicant's bar

8

admission, including the circumstances
surrounding his bar examination.

*In re Application of Kimmer*, 392 Md. at 269.  The Court of Appeals
of Maryland thus holds that, as between it and a lower state court,
it has exclusive jurisdiction over the circumstances surrounding an
applicant's Bar admission.  A determination of whether the Board
improperly delayed finalizing an individual's application, pending
the resolution of outstanding grievances in another state's Bar, is
within the exclusive jurisdiction of the Court of Appeals of
Maryland.

In a motion to dismiss under 12(b)(1), the court is allowed to
consider evidence outside the pleadings to help determine whether
it has jurisdiction over the case before it.  *Richmond*, 945 F.2d at
768.  At the request of the court (paper 19, at 27) to clarify the
Board's policy on deferring consideration of admission to the Bar
when disciplinary proceedings are pending against an applicant,
Defendants submitted an affidavit from the Secretary for the Board,
Bedford T. Bentley (paper 24).  The affidavit stated that the
Board's "policy of deferring a decision until disciplinary
proceedings are concluded applies in general, as well as in the
specific instance of Mr. Sibley . . . ." (*Id.*, at 1).  As the court
noted during the motions hearing on July 21, 2006, such a policy
could potentially raise constitutional issues.  (Paper 19, at 12).
However, Plaintiff does not challenge the rule itself; he
challenges its application in his particular case.  As this court

9

lacks subject matter jurisdiction to review the Board's actions towards a particular applicant, the claim against Defendant Hergenroeder must be dismissed. *See Woodward v. Va. Bd. of Bar Exam'rs*, 598 F.2d 1345 (4th Cir. 1979) (affirming district court's dismissal of a case when the plaintiff asserted individual injuries rather than challenging a general rule).

To the extent that Plaintiff is petitioning this court to issue a writ of mandamus compelling the Board to make a determination on his application, this court again lacks jurisdiction. *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587 (4th Cir. 1969) ("We conclude that since this court lacks appellate jurisdiction over the courts of the State of North Carolina, we also lack jurisdiction to issue the requested writ of mandamus" against the Superior Court of Mecklenburg County, North Carolina). Thus, Plaintiff's claims against Defendant Hergenroeder must be dismissed.

## B. Unauthorized Practice of Law

Defendant Hirshman informed Plaintiff that the activities he engages in from his Rockville office constitute the unauthorized practice of law, (paper 1, Ex. F), where those activities consist of advising out-of-state clients on out-of-state legal issues via telephone from an office in Maryland, (*id.*, Ex. E). Plaintiff asks the court to issue a declaratory judgment that Defendant Hirshman "may not expand the Maryland definition of the unauthorized

practice of law to include advising out-of-state clients by telephone from Maryland on non-Maryland legal issues. . . ." (*id.*, at 1).   Defendants move for dismissal on the grounds that the court cannot grant declaratory relief against Defendant Hirshman when he has not acted in the manner Plaintiff seeks to enjoin and, moreover, the district court has no jurisdiction to hear this matter because, unless Plaintiff challenges a general rule, disciplining attorneys is within the exclusive jurisdiction of the Maryland courts.  (Paper 12, at 9).

### 1.  Jurisdiction under Rule 12(b)(1)

Plaintiff is suing Defendant Hirshman in his official capacity as Bar Counsel.  As Bar Counsel, Defendant Hirshman functions as a representative of the Attorney Grievance Commission.  To the extent that Plaintiff challenges Defendant Hirshman's decision in his particular case, this court lacks jurisdiction to hear the matter. The Court of Appeals of Maryland exercises such extensive control over the Attorney Grievance Commission that the Commission may be considered an arm of the court.  All twelve members of the Commission are appointed by the Court of Appeals of Maryland, the court designates the Chair and Vice Chair of the Commission, the court may remove a member of the Commission at any time, and the Commission is required annually to submit performance evaluations and a budget to the court.  2005 Md. Laws 16-711.  The Court of Appeals of Maryland also must approve the appointment of Bar

Counsel.  *Id.*  *See also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 (1982) (holding that state Bar's ethics committee is "the arm of the court in performing the function of receiving and investigating complaints and holding hearings").  As Bar Counsel, Defendant Hirshman is authorized to "sue to enjoin an unauthorized person from practicing, attempting to practice or offering to practice law." Md. Code Ann., Bus. Occ. & Prof. § 10-406.  If the Attorney General, who enjoys the same authority under the statute, brings an action, Bar Counsel may intervene for good cause at any stage of the proceeding, and vice versa.  *Id.*

As discussed above, a federal district court may not review judicial decisions of state courts. *Feldman*, 460 U.S. at 486.  Bar Counsel's letter to Plaintiff advising him that he was engaged in the unauthorized practice of law is a state judicial proceeding for purposes of federal court jurisdiction, notwithstanding the fact that no formal charges have been filed against Plaintiff.  *See Ford v. Tait*, 163 F.Supp.2d 57, 65 (D.D.C. 2001) (holding that Bar Counsel's informal admonition to the Board of Professional Responsibility, which had yet to render a decision, was an ongoing state judicial proceeding).  *See also Middlesex*, 457 U.S. at 433 (holding that New Jersey's attorney disciplinary proceedings constituted an ongoing state judicial proceeding).  *Feldman* clearly precludes a federal district court from rehearing a particularized

adjudication and thus the court cannot review Bar Counsel's decision as to Plaintiff in particular.

Plaintiff, however, additionally challenges the constitutionality of the policy itself, which he characterizes as defining the unauthorized practice of law to include "advising out-of-state clients by telephone from Maryland on non-Maryland legal issues." (Paper 1, ¶ 1(ii)).  This court has jurisdiction to hear challenges to general state bar rules.  Because Defendants' motion to dismiss was originally styled as a 12(b)(6) motion for failure to state a claim, the court will now look to the sufficiency of Plaintiff's complaint.

### 2.  Sufficiency of the Complaint under Rule 12(b)(6)

A 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in

the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Plaintiff claims the policy violates the following provisions of the federal Constitution: Due Process Clause (second claim), Commerce Clause (third claim), First Amendment (fifth claim), and Privileges and Immunities Clause of Article IV (sixth claim). He also alleges the policy violates the Sherman Act, 15 U.S.C. § 1, *et. seq.* (fourth claim).

### a. Due Process (second claim)

Plaintiff avers that Bar Counsel violated his right to procedural due process "by determining that Plaintiff is engaged in the unauthorized practice of law in Maryland without meaningful notice of the authority upon which Defendant Hirshman is traveling and without providing a meaningful opportunity to be heard." (Paper 1, ¶ 20).

To assert a due process claim, Plaintiff must show that under this rule he was deprived of a protected interest without due process of law. *Elmco Props, Inc. v. Second Nat. Fed. Sav. Ass'n*, 94 F.3d 914 (4th Cir. 1996). Plaintiff's claimed protected interest is his "international and nation-wide *pro hac vice* law practice," which he alleges has been chilled by Bar Counsel's actions.  The Supreme Court has unambiguously held that an attorney has no constitutionally protected interest in his *pro hac vice* practice. *Leis v. Flynt*, 439 U.S. 438, 441-442 (1979). *See also*, *Parnell v. Supreme Court of Appeals of W. Va.*, 110 F.3d 1077, 1081 (4th Cir. 1997 (neither practicing pursuant to, nor moving for another's, *pro hac vice* admission is a fundamental component of the right to practice law.)  Accordingly, an attorney does not have a right to procedural due process in the denial of his ability to practice *pro hac vice*. *Id.* at 444.

### b. Commerce Clause (third claim)

Plaintiff claims that the policy violated the Commerce Clause of Article I, § 8 of the United States Constitution, by determining that Plaintiff is engaged in the unauthorized practice of law because he makes interstate telephone calls to clients from his office in Maryland.  This rule implicates the Commerce Clause, because the Clause encompasses the channels of interstate commerce, *United States v. Lopez*, 514 U.S. 549, 558 (1995), including, *inter alia*, interstate telephone lines, *Gibbs v. Babbitt*, 214 F.3d 483,

15

490-91 (4th Cir. 2000) (quoting *United States v. Miles*, 122 F.3d 235, 245 (5th Cir. 1997)).

The constitutional grant of authority to Congress to regulate interstate commerce "has long been understood, as well, to provide 'protection from state legislation inimical to the national commerce [even] where Congress has not acted.'" *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 310 (1994) (quoting *S. Pac. Co. v. Ariz. ex rel. Sullivan*, 325 U.S. 761, (1945)). This "negative command, known as the dormant Commerce Clause," prohibits states from legislating in ways that impede the flow of interstate commerce. *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995). The dormant Commerce Clause limitation on state power, however, "is by no means absolute. In the absence of conflicting federal legislation the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Lewis v. BT Inv. Mgrs., Inc.*, 447 U.S. 27, 36 (1980).

To determine whether a state rule violates the dormant Commerce Clause, the court must conduct a two-tiered analysis. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986); *Star Scientific Inc. v. Beales*, 278 F.3d 339, 354-55 (4th Cir. 2002). "When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests,"

the statute is generally struck down "without further inquiry." *Brown-Forman*, 476 U.S. at 579.   Thus, for state statutes that discriminate against interstate commerce, courts apply "a virtually *per se* rule of invalidity." *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).   When, however, a statute does not discriminate against interstate commerce but rather "regulates evenhandedly and only indirectly affects interstate commerce," the court proceeds to the second tier, involving a balancing test. *See Star Scientific Inc.*, 278 F.3d at 355; *see also Brown-Forman*, 476 U.S. at 579.   In conducting this second-tier analysis, the court looks to "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman*, 476 U.S. at 579 (*citing Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

The purported rule at issue is that a person who is not admitted to the Maryland Bar may not maintain an office in Maryland from which he advises clients by telephone, regardless of the nature of the legal issues or the location of the clients.   The first step is to determine whether the rule is *per se* invalid.   The rule does not directly regulate interstate commerce because it applies to activities occurring solely within Maryland, even if it may incidentally affect the interstate provision of legal services. Nor does it favor in-state economic interests.   The rule distinguishes between members and non-members of the Maryland Bar.

17

Membership to the Maryland Bar is not directly linked to in-state economic interests because Maryland residency is not required for admission to the Bar.  Thus, the rule of *per se* invalidity does not apply here.

Second, the court must balance the state's interest in enforcing the rule against the burden on interstate commerce. Courts have consistently recognized that the state has a legitimate interest in regulating the practice of law within its borders. "The power of the courts of each state to establish their own rules of qualification for the practice of law within their jurisdiction, . . . is beyond controversy; in fact, it is a power in the exercise of which the state has 'a substantial interest.'" *Morrison v. Bd. of Law Exam'rs*, 453 F.3d 190, 193 (4th Cir. 2006) (quoting *Hawkins v. Moss*, 503 F.2d 1171, 1175 (4th Cir. 1974)).  The next question is whether the burden on interstate commerce exceeds the local benefits.  The rule that a person not licensed to practice law in Maryland may not maintain a law office in Maryland from which he advises clients is not unduly burdensome.  The rule does not, for instance, prohibit all lawyers licensed elsewhere from ever using a phone within Maryland to advise their clients; it is limited to those who maintain offices within the state.  A lawyer licensed elsewhere who wishes to practice extensively in Maryland, such that he requires an office in the state, has the option of applying to the Maryland Bar or petitioning the state court for permission to

practice *pro hac vice*.  The burden on interstate commerce does not outweigh the state's legitimate interest in regulating the practice of law within its borders.  Plaintiff has failed to state a claim upon which relief may be granted with respect to any alleged commerce clause violation.[4]

### c. Sherman Act (fourth claim)

Plaintiff asserts that Bar Counsel, and other yet to be named defendants, by declaring that he is engaged in the unauthorized practice of law, have acted in the restraint of trade or commerce in violation of the Sherman Act, 15 U.S.C. § 2, *et seq.*  This claim is barred by the state action exception to the Act.  In *Bates v. State Bar of Ariz.*, the Supreme Court held the challenged restraint, a disciplinary rule barring attorney advertising, was an "affirmative command of the Arizona Supreme Court under its Rules . . ." and thus was "an act of the government the Sherman Act did not undertake to prohibit."  433 U.S. 350, 359 (1977) (citing *Parker v. Brown*, 317 U.S. 341 (1943)).  The Court distinguished *Bates* from *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975), where it held that a fee schedule published by the county Bar association amounted to price fixing in violation of the Act.  The

---

[4] Plaintiff also asserts a violation under 42 U.S.C. § 1983. This claim must fail because Plaintiff cannot show that Bar Counsel violated his constitutional rights, the first requirement for a § 1983 claim.  *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), *remanded sub nom. to Katz v. United States*, 262 F.3d 897 (9th Cir. 2001)

Court emphasized that the key difference was whether the challenged law was mandated by the state: "it cannot fairly be said that the State of Virginia through its Supreme Court Rules *required* the anticompetitive activities" of price fixing. *Bates*, 433 U.S. at 359 (quoting *Goldfarb*, 421 U.S. at 790) (emphasis added).

Here, as in *Bates*, the prohibition on the unauthorized practice of law comes directly from the state of Maryland as it is set forth in the Maryland Code. *See* Md. Code Ann., Bus. Occ. & Prof. § 10-601. The Sherman Act does not apply to state actions, and thus Plaintiff has failed to state a claim. Plaintiff's fourth claim will be dismissed.

### d.  First Amendment (fifth claim)

Plaintiff asserts that "Plaintiff and his present and future clients have been damaged" because their rights to hire and consult an attorney, protected by the First Amendment's guarantees of freedom of speech, association and petition, have been infringed by Bar Counsel's actions.[5]  (Paper 1, ¶ 29).  An attorney lacks third-party standing to bring an action on behalf of hypothetical future clients. *Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004). In a motion to dismiss the court need not accept conclusory legal allegations or legal assertions couched as factual allegations.

---

[5] Plaintiff does not reference nor support an independent First Amendment right to be hired and consulted, thus this claim will be interpreted as being asserted solely on behalf of his clients.

*See Revene*, 882 F.2d at 873; *Papasan*, 478 U.S. at 286.   Plaintiff has not provided specific factual support for his claim that his present clients have been harmed in any way.   Accordingly, Plaintiff's fifth claim will be dismissed.

### e.  Art. IV Privileges and Immunities Clause (sixth claim)

Plaintiff asserts that Bar Counsel has infringed his right to settle in another state in violation of the Privileges and Immunities Clause of Art. IV.   Article IV's Privileges and Immunities Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948).

> The constitutional provision there alluded to did not create those rights, which it called privileges and immunities of citizens of the States.   It threw around them in that clause no security for the citizen of the State in which they were claimed or exercised.   Nor did it profess to control the power of the State governments over the rights of its own citizens.

*Slaughter-House Cases*, 16 Wall. 36, 77 (1873).

Plaintiff is a resident and citizen of Maryland.   (Paper 1, ¶ 4).   Thus, Plaintiff may not use the Privileges and Immunities Clause of Article IV to assert his rights against Maryland, the state of which he is a citizen.   *See Zobel v. Williams,* 457 U.S. 55, 59 n. 5 (1982).   Plaintiff's sixth claim will be dismissed as a matter of law.

**IV.  Conclusion**

    This court will grant Defendants' motion to dismiss. Plaintiff's cross-motion for summary judgment will be denied.  A separate Order will follow.


                    _____/s/_____
                    DEBORAH K. CHASANOW
                    United States District Judge